Filed 8/31/20  P. v. Lopez CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOSUE LOPEZ,<br><br>    Defendant and Appellant. | 2d Crim. No. B298549<br>(Super. Ct. No. BA465943)<br>(Los Angeles County) |

Josue Lopez appeals from the judgment after a jury convicted him of three counts of resisting an executive officer (Pen. Code,[1] § 69; counts 1-3), battery with injury on a peace officer (§ 243, subd. (c)(2); count 4), and resisting, delaying, or obstructing a peace officer with attempted firearm removal (§ 148, subd. (d); count 6).[2]  The trial court sentenced Lopez to five

---

[1] Further unspecified statutory references are to the Penal Code.

[2] After presentation of the prosecution's evidence, the court ordered entry of a judgment of acquittal on count 5 (attempted

years in state prison (three years for count 4 and three consecutive eight-month terms for counts 1 through 3, for a total of five years with count 6 stayed pursuant to section 654).

Lopez contends the trial court erred when it (1) did not instruct the jury on the lesser included offense of misdemeanor battery on a peace officer (§ 243, subd. (b)), and (2) imposed fines and fees without determining his ability to pay. We conditionally reverse the conviction for battery with injury on a peace officer and remand to the trial court with directions.

## FACTUAL AND PROCEDURAL HISTORY

Two police officers and two probation officers were patrolling in Los Angeles when they saw Lopez walking through a parking lot. One officer recognized Lopez from previous contacts as a "self-admitted" MS-13 gang member and knew Lopez was on probation with search conditions. The officers attempted to stop Lopez by activating their vehicle lights and siren, but he ran away.

The officers got out of their vehicle and followed Lopez. One of the officers saw Lopez grabbing his waistband; he believed Lopez could have a gun.

One officer stopped Lopez and commanded him to put his hands up, turn around, and put his hands behind his back. Lopez initially stopped running and put his hands up, but then he continued to run. Another officer reached out and grabbed Lopez by his backpack, but Lopez "slid out of the backpack." Lopez ran about 15 feet, turned toward an officer, and took a "shooting stance" by "simulating pointing a handgun." Lopez ran

---

murder of a peace officer (§§ 664, 187, subd. (a)) pursuant to section 1118.1.

2

and the officers followed.  At one point, Lopez said to an officer, "I'm gonna shoot you, dog."

One of the officers broadcast that they were in pursuit "of a man with a possible gun."  Officer David Christensen heard the broadcast, arrived at the scene, and located Lopez.  Lopez was running down the stairs of an apartment complex toward Christensen.  Christensen had his gun out.  Christensen told Lopez to put his hands up and get down, but Lopez continued running downstairs while lifting his shirt "as if he was grabbing for a gun."

Lopez opened a gate that was between him and Christensen.  He punched Christensen twice in the face.  Christensen tried pushing Lopez towards the fence with his left arm while holstering his gun with the other arm.  Lopez punched Christensen two more times before Christensen pulled him into a "bear hug."  They "roll[ed] to the ground," and Lopez tried to grab Christensen's gun.  Christensen told the other officers "He's going for my gun."  Christensen punched Lopez in the face until Lopez let go of the gun.  The other officers intervened and apprehended Lopez.  The body camera videos showed the officers chasing Lopez and the fight between Lopez and Christensen.

Christensen had a bloody nose and some swelling around his teeth.  An ambulance was called to the scene, and the paramedics looked at Christensen's nose.  Christensen asked them to "clean up the blood that had run on [his] upper lip and face."  Christensen also "had to go to a department approved clinic to be examined by a doctor."  He testified that he went to get medical treatment "to see if any further damage had occurred."  He explained that "everything felt swollen on the front

of my face.  I didn't know if . . . something got damaged, my nose had been broken, I have no idea."

Christensen's nose was not broken.  A photo was taken of his injuries at the clinic.  It showed that his bottom lip was "a little bit . . . raised" and red.  Christensen missed the next day of work.  He did not file an "injured on duty claim."

During closing arguments, the prosecutor argued that though Christensen did not "suffer a broken arm or a broken nose," he suffered an injury that required him to "seek medical attention."  The prosecutor argued, "If you are in a situation where you are attacked by somebody on the street . . . and that person ends up causing an abrasion, breaking skin, do you want, as a police officer, to have a doctor have a look at that and make sure that you're okay?  Yeah, you want that medical attention."

The defense argued Christensen did not suffer an injury.  He highlighted the photograph of Christensen taken at the hospital.  The defense argued, "that picture is ridiculous . . . there is no injury here.  And if this in the injury, I have literally hurt myself more eating a hot dog.  He could have bit his lip."  "He took a day off work. . . . That's all he did.  He went to the clinic because he had to."  The defense also discussed the evidence regarding the bloody nose:  "[Christensen] claimed that the ambulance cleaned up the blood?  I guess the invisible blood that you clearly cannot see on the videos of the actual incident.  Apparently he started bleeding later, right? . . . It's hard to say how you can start bleeding from your nose long after a fight concluded if it was a result of a punch."  The defense also asserted that there was "no medical record, you have nothing about an injury."

The trial court instructed the jury with CALCRIM No. 945, battery with injury on a peace officer (§ 243, subd. (c)(2)), which requires proof of "any physical injury that requires professional medical treatment." The trial court did not instruct on the lesser included offense of misdemeanor battery on a peace officer (§ 243, subd. (b)), which does not.

The jury deliberated for one hour. It asked one question regarding the gang allegation. The jury found the defendant guilty of three counts of resisting an executive officer (§ 69), one court of battery with injury on a peace officer (§ 243, subd. (c)(2)), and one count of resisting, delaying, or obstructing a peace officer with attempted firearm removal (§ 148, subd. (d)). It did not find true the gang allegations attached to each count (§ 186.22, subd. (b)(1)(A)).

## DISCUSSION

### *Jury Instruction*

Lopez contends the trial court prejudicially erred when it did not instruct sua sponte on the lesser included offense for misdemeanor battery on a peace officer (§ 243, subd. (b)). We agree.

1.      Evidence of Lesser Included Offense

A trial court must instruct the jury sua sponte on a lesser included offense where there is substantial evidence, "'"which, if accepted . . ., would absolve [the] defendant from guilt of the greater offense" [citation] *but not the lesser*.' [Citation.]" (*People v. Waidla* (2000) 22 Cal.4th 690, 733 (*Waidla*), original italics.) Substantial evidence means evidence that a reasonable jury could find persuasive. (*People v. Hayes* (2006) 142 Cal.App.4th 175, 181 (*Hayes*).) "'In deciding whether evidence is "substantial" in this context, a court determines only its bare

legal sufficiency, not its weight. [Citations.]' [Citation.]" (*Ibid*.) We independently review whether the trial court failed to instruct on a lesser included offense. (*Waidla*, at p. 733.)

Unlike the greater offense, section 243, subdivision (b), does not include the element of injury. "Injury" is defined as "any physical injury which requires professional medical treatment." (§ 243, subd. (f)(5).) The test for determining injury is "objective and factual." (*People v. Longoria* (1995) 34 Cal.App.4th 12, 17.) "It is the nature, extent, and seriousness of the injury—not the inclination or disinclination of the victim to seek medical treatment—which is determinative. A peace officer who obtains 'medical treatment' when none is required, has *not* sustained an 'injury' within the meaning of section 243, subdivision (c). And a peace officer who does *not* obtain 'medical treatment' when such treatment is required, *has* sustained an 'injury' within the meaning of section 243, subdivision (c)." (*Ibid*., fn. omitted, original italics.)

The trial court erred when it did not instruct on the lesser included offense. Christensen testified that "everything felt swollen on the front" of his face and he had a bloody nose, but his nose was not broken. A photograph taken shortly after the incident of the injury showed only that his bottom lip was "a little bit . . . raised" and red. Although Christensen took one sick day off from work, he did not file an "injured on duty claim." Based on this evidence, a reasonable jury could conclude that the injury to Christensen was not serious enough to require professional medical treatment. (See *Hayes*, *supra*, 142 Cal.App.4th at pp. 181-182 [evidence of "a little blood" and swelling, soreness of the leg for several days, photographs showing minor bruising, and no

6

evidence that the injury interfered with physical activities, was substantial evidence of misdemeanor battery on a police officer].) Because the "record contains substantial evidence that would absolve appellant of battery with injury but justify conviction of the lesser included offense of battery without injury," the trial court erred by failing to instruct sua sponte on the lesser included offense. (*Id.* at p. 182.)

### 2. Prejudice

In a noncapital case, error in failing to instruct sua sponte on a lesser included offense "must be reviewed for prejudice exclusively under *Watson.*" (*People v. Breverman* (1998) 19 Cal.4th 142, 178.) "'Under the state standard, "such misdirection of the jury is not subject to reversal unless an examination of the entire record establishes a reasonable probability that the error affected the outcome." [Citations.] "The Supreme Court has emphasized 'that a "probability" in this context does not mean more likely than not, but merely a *reasonable chance,* more than an *abstract possibility*. [Citations.]' [Citation.]'" [Citation.]" (*People v. Brown* (2016) 245 Cal.App.4th 140, 154 (*Brown*).)

We decided a similar issue in *Hayes*, *supra*, 142 Cal.App.4th 175. As this case, Hayes was charged with felony battery with injury on an officer (§ 243, subd. (c)(1)), and the trial court did not instruct on the lesser included offense of misdemeanor battery on an officer (§ 243, subd (b)). (*Hayes*, at p. 180.) There, Hayes kicked a 50-pound concrete ashtray, which hit the officer on the shin. (*Id.* at p. 179.) The ashtray ripped the officer's pants and inflicted a "'four to four and a half inch laceration'" on his shin. (*Ibid*.) Two photographs of the injury showed "'a little blood'" and a "'little swelling,'" and the officer

7

reported that his leg was sore for several days.  (*Ibid*.)  The officer put ice on the injury but did not seek medical treatment because he believed he could "'deal with it on [his] own.'"  (*Ibid*.)

In examining the evidence, we stated:  "it appears to us, as it seems to have also appeared to [the officer], that the injury was not severe enough to require professional medical treatment."  (*Hayes*, *supra*, 142 Cal.App.4th at p. 183.)  It was thus "reasonably probable that appellant would have obtained a more favorable outcome if the jury had not been presented with an unwarranted all-or-nothing choice between conviction of the charged offense and complete acquittal."  (*Ibid*.)

*Brown*, *supra*, 245 Cal.App.4th 140, is also instructive.  In *Brown*, our colleagues in the First Appellate District held that failure to give instruction on the lesser included offense of simple assault (§ 240), where Brown was charged with using force or violence to resist an officer in performance of their duty (§ 69), was prejudicial error.  There, the prosecution presented evidence that the officers used reasonable force to apprehend Brown and that Brown attempted to flee on his bicycle and "repeatedly swung" at and struck the officers.  (*Brown*, at p. 154.)  Brown testified that he did not resist the officers before falling off his bike and that the officers used excessive force when Brown was "unresisting and ready to surrender—a scenario that would have made the arrest unlawful."  (*Ibid*.)  The jury could have accepted either theory of the case, or a third option—that both parties used excessive force—which "would have supported an assault conviction."  (*Ibid*.)  But the jury was not given an instruction on the third option.

The court concluded that instructional error precluded the jury from finding the third option true.  (*Brown*,

*supra*, 245 Cal.App.4th at p. 155.) And the error was prejudicial. "A 'jury without an option to convict a defendant of a lesser included offense might be tempted to convict the defendant of an offense greater than that established by the evidence instead of rendering an acquittal.' [Citation.]" (*Ibid.*) Notably, the jury "showed a readiness to scrutinize the evidence . . . and convict on lesser charges than the prosecutor requested." (*Ibid.*) For example, the jury convicted Brown on the lesser included offense of a drug charge "which is an indication that it had doubts about the prosecution's case which might also have affected its resolution of the section 69 charge." (*Id.* at p. 156.)

Here, the prosecution's evidence of the injury was legally substantial, but factually equivocal. The defense argued the injuries were minor. Specifically, he argued that the photograph of the injury shows that it was minor, and there were no medical records. The defense also refuted the claim that Christiansen suffered a bloody nose, noting that no blood could be seen on the body camera video. Moreover, the defense argued that if there was a nose bleed, it is "hard to say" if it "was a result of a punch." It is "reasonably probable," that is, there was a "reasonable chance," that the jury would have accepted the defense argument and convicted on the lesser-included offense had it been given that option. (*Hayes*, *supra*, 142 Cal.App.4th at p. 183; *Brown*, *supra*, 245 Cal.App.4th at p. 155.) Like *Brown*, the jury showed "a readiness to scrutinize the evidence" and a willingness to reject parts of the prosecution's case. (*Brown*, at p. 155.) It asked a question regarding the gang allegations attached to each of the five counts and ultimately found them "not true." Because there was a "reasonable chance" Lopez would have obtained a more favorable outcome had it not been for the

9

instructional error, we must reverse the conviction.  (*Id*. at p. 154.)

### *Fines and Fees*

Citing to *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*), which was decided after he was sentenced, Lopez contends the trial court erred when it imposed a $300 restitution fine (§ 1202.4), five $30 court facilities fees (Gov. Code, § 70373), and five $40 court operations fees (§ 1465.8) without first determining his ability to pay.  Because we are reversing the conviction on count 4, Lopez must be resentenced.  At resentencing, Lopez can renew his objection.

### DISPOSITION

The judgment is affirmed with the exception of Lopez's conviction for battery with injury on a peace officer, which is conditionally reversed pursuant to the procedure outlined in *Hayes*, *supra*, 142 Cal.App.4th at page 184.  If, after the filing of the remittitur in the trial court, the prosecutor does not retry Lopez on the charged offense, the trial court shall proceed as if the remittitur constituted a modification of the judgment to reflect a conviction of the lesser included offense of misdemeanor battery on a peace officer (§ 243, subd. (b)), and shall resentence accordingly.  Upon resentencing, the trial court shall make a new order on fines and fees.

NOT TO BE PUBLISHED.

TANGEMAN, J.

We concur:

YEGAN, Acting P. J.

PERREN, J.

10

Robert J. Perry, Judge

Superior Court County of Los Angeles

_____

        Stanley D. Radtke, under appointment by the Court
of Appeal, for Defendant and Appellant.

        Xavier Becerra, Attorney General, Lance E. Winters,
Chief Assistant Attorney General, Susan Sullivan Pithey,
Assistant Attorney General, David E. Madeo and Thomas C.
Hsieh, Deputy Attorneys General, for Plaintiff and Respondent.